FILED

2010 SEP -8  AM 10: 52

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

1  JULIA SOROKIN, Pro Se
   LOUIS A. BRAVO, Pro Se
2  3895 Clairmont Drive, Suite B#210
   San Diego, CA 92117
3  Telephone: (858) 384-3528
   Facsimile: (858) 384-3581
4  Email: ljemail2010@aol.com

5

6  Plaintiffs, Pro Se

7

8

9

10

11                   UNITED STATES DISTRICT COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

13

14                                    '10 CV 1 8 6 1 JAH        JMA

15  PLAINTIFF(s)                )   Case No._____
                                )
16  JULIA SOROKIN, LOUIS A. BRAVO )   COMPLAINT FOR DAMAGES
                                )   • CONSPIRACY
17            v.                 )   • DEFAMATION OF CHARACTER
                                )   • TORTIOUS INTERFERENCE
18  DEFENDANT(s)                 )   • INTENTIONAL INFLICTION OF
                                )     EMOTIONAL DISTRESS
19  DOW JONES & COMPANY INC.; WALL )
20  STREET JOURNAL; ATTORNEY      )   JURY TRIAL DEMANDED
    MARTIN SCHWIMMER             )
21                                )
22  _____)

23

24

25

26

27

28
                        Page 1 of 15

## PRELIMINARY STATEMENT

1. The Defendants the Dow Jones and Company Inc., and the Wall Street Journal and Attorney Martin Schwimmer on March 5th 2008, began the malicious process of taking over Plaintiff Julia Sorokin's business idea for gain by utilizing prosecutorial powers of the District Attorney's Office of New York County, NY in dealing with a website domain dispute.

2. On March 5th 2008, the Defendant Attorney Martin Schwimmer attended a WIPO Arbitration and Mediation Center hearing to arrange for the transfer of ownership of domain names legally owned by Plaintiff Julia Sorokin to his client, the Defendant the Dow Jones and Company Inc., and the Wall Street Journal.

3. On March 5th 2008, WIPO Arbitration and Mediation Center granted the domain ownership transfer to the Defendant Attorney Martin Schwimmer, and his clients, the Defendant the Dow Jones and Company Inc., and the Wall Street Journal, based on false statements made by the Defendant Attorney Martin Schwimmer regarding trademark (mark) violations. This entire process took place without the knowledge, permission or presence of the Plaintiff Julia Sorokin.

4. The Defendants the Dow Jones and Company Inc, the Wall Street Journal and Attorney Martin Schwimmer then contacted the District Attorney's Office of New York County, NY, specifically the former District Attorney, Robert M. Morgenthau.

5. Former District Attorney Robert M. Morgenthau agreed to cooperate with the Defendants, and agreed to turn the civil website dispute into an unlawful criminal prosecution of the Plaintiff Julia Sorokin, even though his office had no jurisdiction over this matter. Former District Attorney Robert M. Morgenthau then proceeded to indict Plaintiff Julia Sorokin on false charges of personal identify theft,  and then instructed Assistant District Attorney Joanne Siegmund to prosecute Plaintiff Julia Sorokin on false charges of Aggravated Personal Identity Theft.  Former District Attorney Robert M.

1   Morgenthau did these actions on the request of the Defendants  the Dow Jones and Company, Inc, the

2   Wall Street Journal and Attorney Martin Schwimmer.

3           6. Former District Attorney Robert M. Morgenthau was at the time a frequent writer for the

4   Defendant the Wall Street Journal, and would in a few months go to work for Wachtell, Lipton, Rosen &

5   Katz, the same law firm that represents the Bancroft Family who are former owners of the Dow Jones & Co

6   and also current board members of the Defendant the Dow Jones & Company Inc..

7           7. Both Plaintiffs Julia Sorokin and Louis A. Bravo of San Diego, California sue all Defendants

8   who are named in this complaint for money damages arisen from the Defendants acts of Conspiracy,

9

10  Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress that led

11  to the false arrest, false imprisonment, loss of unborn child in prison, money damages, defamation of

12  character, loss of business, loss of income,  loss of personal belongings, loss of home, and pain and

13  suffering of both Plaintiffs Julia Sorokin and Louis A Bravo.

14

15

16                        **JURISDICTION AND VENUE**

17          8.  The primary conduct complained of herein occurred in San Diego County, California. This

18  Court has jurisdiction over this action under the provisions of 18 U.S.C. §1332(a) in that the value of

19  the amount in controversy exceeds $75,000, exclusive of interest and costs.

20          9. Plaintiffs Julia Sorokin and Louis A. Bravo reside in San Diego, California.

21
22          10. All Defendants reside in New York State and were employed in New York State during the
23  time of the alleged actions and damages done to both Plaintiffs.

24          11. All acts necessary or precedent to the bringing of this lawsuit occurred in this judicial

25  district.

26          12. This court has jurisdiction pursuant to 28 U.S.C. § 1332 (a) (1).

27

28                                Page 3 of 15

13. Venue is proper under 28 U.S.C. § 1391 (a) (2).  A substantial part of the events giving rise to the claim occurred in the Southern District of California.

## THE PARTIES

14. Plaintiff Julia Sorokin is a California resident that has resided in San Diego, California and Los Angeles, California for over twelve years. Plaintiff Julia Sorokin has been legally married to Plaintiff Louis A. Bravo and has shared a home and income for over fifteen years.

15. Plaintiff Louis A. Bravo is a California resident that has resided in San Diego, California and Los Angeles, California over twelve years. Plaintiff Louis Bravo has been legally married to Plaintiff Julia Sorokin and has shared a home and income for over fifteen years.

16. Dow Jones and Company Inc. is named in this complaint as a Defendant for acts of Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress done to both Plaintiffs Julia Sorokin and Louis A. Bravo.

17. Wall Street Journal, a business unit of the Dow Jones and Company Inc. is named in this complaint as a Defendant for acts of Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress done to both Plaintiffs Julia Sorokin and Louis A. Bravo.

18. Attorney Martin Schwimmer is named in this complaint as a Defendant for acts of Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress done to both Plaintiffs Julia Sorokin and Louis A. Bravo.

## STATEMENT OF FACTS

19. The Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer on March 5th 2008 unlawfully took over ownership of Plaintiff Julia Sorokin's website domains by making false statements of criminal acts and trademark (mark) violations without the knowledge, permission, or presence of Plaintiff Julia Sorokin.

- **Attached as Exhibit A. (Dow Jones & Co. Inc. v. Ms. Sorokin Case No. D2008-0027)**

20. The Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer, in order to be insulated from a potentially large lawsuit for unlawfully taking over Plaintiff Julia Sorokin's business, sought the assistance of Former District Attorney Robert M. Morgenthau in order to get Plaintiff Julia Sorokin out of their way and launch her business idea, WSJ Media magazine into their own WSJ Magazine.

21. Former District Attorney Robert M. Morgenthau took the civil website domain complaint from the Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer, and proceeded to indict, kidnap, arrest and prosecute Plaintiff Julia Sorokin on false charges of Aggravated Personal Identity Theft of the name the Wall Street Journal. (A New York corporation, not a New York resident)

- **Attached as Exhibit C. (Plaintiff Julia Sorokin's NYS Criminal Indictment)**

22. The Defendants the Dow Jones and Company Inc., and the Wall Street Journal, now in the possession of Plaintiff Julia Sorokin's website domain and business idea, WSJ Media magazine, launched WSJ Magazine on Sept 3rd 2008, with a kickoff party held in New York. WSJ Magazine would go on to become a very lucrative business for the Defendants the Dow Jones and Company Inc., and the Wall Street Journal.

- **Attached as Exhibit B. (Dow Jones & Co. Inc. WSJ Magazine launch press release)**

23. On or about October 31st 2008, the Defendants the Dow Jones and Company Inc., the Wall Street Journal and Attorney Martin Schwimmer attended and testified before the NY Grand Jury hearing, where the Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer accused Plaintiff Julia Sorokin of criminal acts by making  false statements in support of the Aggravated Personal Identity Theft charges Plaintiff Julia Sorokin would be indicted on after their testimony.

- **Attached as Exhibit D (The District Attorney Office press release thanking the Wall Street Journal, a company owned by the Defendant the Dow Jones and Company Inc. for their participation and testimony in the indictment of Plaintiff Julia Sorokin)**

24. Former District Attorney Robert M. Morgenthau, a frequent writer for the Defendant the Wall Street Journal, has his criminal investigators and prosecutor staff partner up with the San Diego County Sheriff's Department in order to conduct the false arrest and kidnapping of Plaintiff Julia Sorokin at her home at 101 Market Street, San Diego, California, 3,000 miles away from New York.

25. San Diego County Sheriff's Department on the night of December 2nd 2008 arrested Plaintiff Julia Sorokin at her home, physically assaulted her and put her in the Las Colinas Women Detention Facility for two weeks.

26. Plaintiff Julia Sorokin was then extradited to New York City on December 16th 2008, to face several felony counts of Aggravated Personal Identity Theft and spent one more week in prison where she had a miscarriage. All of this pain and suffering was due to the Defendants' actions.

- **Attached as Exhibit E (Plaintiff Julia Sorokin's terms and business overview)**

27. Plaintiff Julia Sorokin is arraigned in New York where she and Plaintiff Louis A. Bravo learn of the acts of Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress done by the Defendants, the Dow Jones and Company Inc, the Wall Street Journal and Attorney Martin Schwimmer.

28. Plaintiff Julia Sorokin and Plaintiff Louis A. Bravo file lawsuits in the District Court of Southern California against the District Attorney's Office of New York County, and the San Diego Sheriff's Department for civil rights violations. **(Sorokin v. New York Case No: 10 CV1153WQH) & (Sorokin v. San Diego Sheriff's Department No: (10CV1842LWVG)**

///

///

29. Both Plaintiffs during this timeframe had also been evicted from their home after the property management company was falsely told of illegal activities being conducted in the Plaintiffs' home by the San Diego Sheriff's Detectives who conducted the arrest and kidnapping of the Plaintiff Julia Sorokin on behalf of the New York County District Attorney Office.

30. This was sufficient grounds to terminate the lease that was in good standing due to false accusations and actions by the Sheriff's Detectives on behalf of the New York County District Attorney Office.

31. Both Plaintiffs lost everything they owned including furniture, business equipment, personal files, clothing, family photos, their wedding bands-everything was thrown out by the apartment clean up team after the eviction.

32. By losing their business equipment and business files, both Plaintiffs lost all means of generating income due to the apartment clean up done after the eviction. The court records in San Diego will show a record of the eviction of both Plaintiffs from their home.

33. Plaintiff Julia Sorokin was kept in prison for three weeks in two states for owning a magazine and website domain that the Defendants the Dow Jones and Company Inc, the Wall Street Journal wanted for their own financial gain, but did not want to buy from her, so they had the Plaintiff Julia Sorokin arrested and prosecuted to get her out of their way, enabling the Defendants the Dow Jones and Company Inc, and the Wall Street Journal to launch WSJ Magazine.

**Chronological Overview of Events**

A. On March 5th 2008 the Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer unlawfully took over ownership of Plaintiff Julia Sorokin's website domains without her knowledge, permission, or presence.

B. In May 2008, the Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer sought the assistance of Former District Attorney Robert M. Morgenthau to insulate them from a potentially large lawsuit from Plaintiff Julia Sorokin.

C. On Sept 3rd 2008, the Defendants the Dow Jones and Company Inc., and the Wall Street Journal held a kickoff party in New York for WSJ Magazine, that would go on to become a very lucrative business for the Defendants the Dow Jones and Company Inc., and the Wall Street Journal.

D. On or about October 31st 2008, the Defendants the Dow Jones and Company Inc., and the Wall Street Journal and Attorney Martin Schwimmer attended and testified at the NY Grand Jury hearing where the Defendants the Dow Jones and Company Inc., Wall Street Journal and Attorney Martin Schwimmer accused Plaintiff Julia Sorokin of criminal acts and trademark (mark) violations by making false statements in support of the Aggravated Personal Identity Theft charges Plaintiff Julia Sorokin would be indicted on.

E. On the night of December 2nd 2008, the San Diego County Sheriff's Department arrested and kidnapped Plaintiff Julia Sorokin at her home at 101 Market Street San Diego California, physically assaulted her and put her in the Las Colinas Women Detention Facility for two weeks, and on December 16, 2008, Plaintiff Julia Sorokin was extradited to New York to face false charges of Personal Identity Theft. Plaintiff Julia Sorokin, pregnant at the time, spent one week at Rikers Island prison in New York City and suffered a miscarriage at Rikers Island.

### Plaintiffs' Pain, Suffering and Damages

34. Plaintiff Julia Sorokin's pain, suffering and damages:

1. Kidnapping and false arrest, and false imprisonment, a violation of constitutional rights.

2. Cruel and unusual punishment, a violation of constitutional rights.

3. Suffered a miscarriage in prison with no medical care.

4. Denied Due Process rights, a violation of constitutional rights.

5. Search of her home without a search warrant, a violation of constitutional rights.

6. Being forced into homelessness in New York for six months during the criminal court process on false charges.

7. Unreasonably high bail $50,000 USD, a violation of constitutional rights.

8. Never being read Miranda rights, a violation of constitutional rights.

9. Subjected to religious persecution, a violation of constitutional rights.

10. Loss of all personal and business belongings due to eviction of home.

11. Loss of income, reputation, and business or employment opportunities.

35. The Plaintiff Julia Sorokin is now attempting to make a life for herself after surviving three weeks in prison and police abuse. Additionally, the loss of her home and reputation also impacted any future potential of not only being able to restore her personal life and her business career, but also gaining any future employment in her field.

36. The health damages that the Plaintiff Julia Sorokin has to now live with are:

1. Suffers from constant fear of arrest.

2. Suffers from constant claustrophobia.

3. Suffers from sleeping and eating disorders.

4. Suffers from loss of concentration.

5. Suffers from constant depression.

6. Suffers from fear of being left alone.

7. Suffers from constant nightmares.

8. Suffers from constant anxiety / panic attacks.

37. Plaintiff Louis A. Bravo's pain, suffering and damages:

1. Search of his home without a search warrant, a violation of constitutional rights.

2. Loss of all personal belongings due to eviction of home.

3. Being forced into homelessness in New York for six months during the criminal court process on false charges against his wife.

4. Loss of Med-Accommodations, a business that provided medical personnel relocation services across North America. This company had an average yearly revenue of $122,286 USD and a market value of over 5 million USD. Plaintiff Louis Bravo lost this business due to eviction of home and removal of business equipment and software.

5. Loss of Clinical Trials Over Watch, a business that provided biotech and pharmaceutical companies with a project management drug development solution.  This company had an average yearly revenue of $234,114 USD and a market value of over 10 million USD.  Plaintiff Louis A Bravo lost this business due to eviction of home and removal of business equipment and software.

6. Emotional and economic pain of having to care for his wife after false arrest.

7. Emotional pain of having lost his unborn child, due to wife's false arrest and unlawful imprisonment in both San Diego County and New York City.

8. Suffers from the enormous financial legal cost due to the false arrest.

38. All damages to both Plaintiffs are a direct result of all of the acts done by the Defendants named in this action including acts of Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress that led to the false arrest, false imprisonment, loss of unborn child in prison, money damages, defamation of character, loss of business, loss of income, personal belongings, and home and pain and suffering.

## CAUSES OF ACTION

### COUNT 1

### CONSPIRACY

39. Plaintiffs repeat 1-38 of this complaint as if restated fully here.

40.  Plaintiffs Julia Sorokin and Louis A Bravo sue all of the Defendants named in this action for their act of Conspiracy that led to the emotional, physical and economic suffering of both Plaintiffs.

41. All of the Defendants named in this action made false statements to the New York County District Attorney's Office.  These actions done by the Defendants were part of a larger conspiracy to

unreasonably cause emotional, physical and economic suffering to Plaintiff Julia Sorokin. The Defendants named in this action assisted in the false arrest and prosecution of the Plaintiff Julia Sorokin, in order to prevent her from filing a potentially large lawsuit for unlawfully taking over her business website domain and business idea WSJ Media magazine, for their financial gain.

42. The Defendants named in this action clearly knew that no court in America would ever transfer ownership of a business or a website domain legally owned by another citizen, and that no trademark (mark) was ever used or violated by the Plaintiff Julia Sorokin. The Defendants named in this action acted in Conspiracy to take over Plaintiff Julia Sorokin's business and website domain by assisting in her false arrest and prosecution, in order to get her out of the way and unlawfully turn her business idea into their own WSJ Magazine.

43. All of the Defendants named in this action have met the criteria for a conspiracy lawsuit since:

- A conspiracy is an agreement between two or more persons to commit a wrongful act.
- Such an agreement may be made orally or in writing or implied by the conduct of the parties.
- An agreement between two or more natural persons to break the law at some time in the future or to achieve a lawful aim by unlawful means.

44. As a result of this act of Conspiracy by all of the Defendants named in this action, the Plaintiffs Julia Sorokin and Louis A. Bravo were subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-38 of this complaint.

///

///

///

///

1

2

## COUNT 2

### DEFAMATION OF CHARACTER

3

4   45. Plaintiffs repeat 1-38 of this complaint as if restated fully here.

5   46.  Plaintiffs Julia Sorokin and Louis A Bravo sue all of the Defendants named in this action

6   for Defamation of Character of Plaintiff Julia Sorokin that led to the emotional, physical and economic

7   suffering of both Plaintiffs.

8   47. All of the Defendants named in this action are liable for of the emotional, physical and

9   economic suffering of both Plaintiffs because they made false statements of criminal acts and

10  trademark (mark) violations by the Plaintiff Julia Sorokin to the New York County District Attorney's

11  Office, who had no jurisdiction over such matters, clearly knowing that these statement were false and

12  would cause great harm.

13  48. This Defamation of Character of Plaintiff Julia Sorokin took place during:

14

15      •   The initial WIPO statements / filings.

16      •   The initial conversation with the New York County District Attorney's Office of NY.

17      •   During the NY Grand Jury hearing testimony.

18  49. All of the Defendants named in this action made false statements of criminal acts and

19  trademark (mark) violations that have caused great harm to both Plaintiffs.

20

21  50. As a result of this Defamation of Character by all of the Defendants named in this action,

22  the Plaintiffs Julia Sorokin and Louis A. Bravo were subjected to emotional, physical and economic

23  suffering, as is more fully alleged above in 1-38 of this complaint.

24  ///

25  ///

26  ///

27

28

1

## COUNT 3

2

## TORTIOUS INTERFERENCE

3

51. Plaintiffs repeat 1-38 of this complaint as if restated fully here.

4

5

52. Plaintiffs Julia Sorokin and Louis A Bravo sue all of the Defendants named in this action for

6

Tortious Interference.

7

53. All of the Defendants named in this action were fully aware that Plaintiff Julia Sorokin

8

owned and operated two corporations that specialized in co-op advertising insert magazines, when they

9

wrongfully accused Plaintiff Julia Sorokin of impersonating the Wall Street Journal in a criminal

10

manner.

11

54. This act of Tortious Interference led to not only the false arrest and prosecution of Plaintiff

12

13

Julia Sorokin, but also to the end of her business, banking and credit relationships that she has built

14

over a 10 year period.

15

55. As a result of this Tortious Interference done by all of the Defendants named in this action,

16

the Plaintiffs Julia Sorokin and Louis A. Bravo were subjected to emotional, physical and economic

17

suffering, as is more fully alleged above in 1-38 of this complaint.

18

19

## COUNT 4

20

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

21

22

56. Plaintiffs repeat 1-38 of this complaint as if restated fully here.

23

57. Plaintiffs Julia Sorokin and Louis A Bravo sue all of the Defendants named in this action for

24

Intentional Infliction of Emotional Distress.

25

58. All of the Defendants named in this action are liable for of the emotional, physical and

26

economic suffering of both Plaintiffs because they made false statements of criminal acts and

27

28

Page 13 of 15

trademark (mark) violations by the Plaintiff Julia Sorokin to the New York County District Attorney's Office of NY, who had no jurisdiction over such matters, clearly knowing that these statements were false and would cause great harm to the Plaintiff Julia Sorokin and her husband, Plaintiff Louis A. Bravo.

59. All of the Defendants named in this action could have sued Plaintiff Julia Sorokin if they felt that Plaintiff Julia Sorokin was in some way violating a trademark (mark) but instead, they made false statements of criminal acts and trademark (mark) violations to the New York County District Attorney's Office of NY, clearly knowing that these false statements of criminal would cause great harm to Plaintiff Julia Sorokin and her husband Plaintiff Louis A. Bravo.

60. As a result of Intentional Infliction of Emotional Distress by all of the Defendants named in this action, the Plaintiffs Julia Sorokin and Louis A. Bravo were subjected to emotional, physical and economic suffering, as is more fully alleged above in 1-38 of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Julia Sorokin and Plaintiff Louis A. Bravo respectfully request that this court enter judgment in favor of the Plaintiffs and against the Defendants listed in this complaint and award the Plaintiffs:

1. The Plaintiffs be awarded against all the Defendants, jointly and severally exemplary damages in the amount of $500,000,000.00 (Five Hundred Million U.S Dollars)

2. The Plaintiffs be awarded against all the Defendants, jointly and severally compensatory damages in the amount of $500,000,000.00 (Five Hundred Million U.S Dollars)

3. The Plaintiffs be awarded interest, the cost of disbursements and legal fees of this action, and such other and further relief, as the court may seem just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted:

_____

DATED:  September 8th 2010

Julia Sorokin Pro Se
Plaintiff
3895 Clairemont Drive, Suite B # 210
San Diego, CA
Email: ljemail2010@aol.com
Tel: 858 384 3528; Fax: 858 384 3581

_____

DATED:  September 8th 2010

Louis A. Bravo Pro Se
Plaintiff
3895 Clairemont Drive, Suite B # 210
San Diego, CA
Email: ljemail2010@aol.com
Tel: 858 384 3528; Fax: 858 384 3581

**EXHIBIT A**

# EXHIBIT - A

WIPO grants Plaintiff Julia Sorokin's website domains to the Defendants.



# WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

### Dow Jones & Company Inc. v. Ms. Sorokin

### Case No. D2008-0027

## 1. The Parties

The complainants are Dow Jones & Company, Inc., New York, United States of America, and Dow Jones LP, Massachusetts, United States of America (the complainants are collectively referred to as "Complainant"), represented by the Law Offices of Martin Schwimmer, United States of America.

The Respondent is Ms. Sorokin, having addresses of Walmut [sic] Creek, California and San Antonio, Texas, United States of America.[1]

## 2. The Domain Names and Registrar

The disputed domain names <wallstreetjournaladonline.com> and <wallstreetjournaladvertising.com> (the "Disputed Domain Names") are registered with GoDaddy.com, Inc.

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on January 9, 2008. On January 21, 2008, the Center transmitted by email to GoDaddy.com, Inc. a request for registrar verification in connection with the domain names at issue. On January 22, 2008, GoDaddy.com, Inc. transmitted by email to the Center its verification response denying that Domains by Proxy, Inc. is the registrant, stating that the registrant is in fact Ms. Sorokin, and providing the contact details for Ms. Sorokin. In response to a notification by the Center of a change in registrant information, the Complainant filed an amendment to the Complaint on January 24, 2008. The Center verified that the Complaint, together with the amendment to the Complaint, satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on January 25, 2008. In accordance with the Rules, paragraph 5(a), the due date for Response was February 14, 2008. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's default on February 15, 2008.

The Center appointed Maxim H. Waldbaum as the sole panelist in this matter on February 20, 2008. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

The Complainant has used the mark THE WALL STREET JOURNAL (the "Mark") since 1889, and has grown to become one of the country's largest daily national newspapers, with a global paid circulation of more than 2.9 million in print and online subscriptions. The Complainant has registered the Mark, and marks incorporating the Mark, in 56 countries around the world. The Complainant holds registrations of the Mark in the Principal Register of the United States Patent and Trademark Office, including the following incontestable registrations: 0,408,379 (August 8, 1944); 1,368,347 (October 29, 1985); 1,498,049 (July 26, 1988); and 1,960,159 (March 5, 1996).

The Complainant sells advertising for its online newspaper and employs salespeople who solicit advertising for its online and print editions.

### 5. Parties' Contentions

#### A. Complainant

The following allegations are summarized from the amended Complaint.

The Disputed Domain Names are confusingly similar to the Mark. Each of the Disputed Domain Names incorporates the Mark in its entirety, and adds a descriptive element ("Adonline" and "Advertising") and the ".com" TLD suffix. The addition of a relevant descriptive term does not distinguish a domain name from a trademark.

The Respondent has no rights or legitimate interest in the Disputed Domain Names and is using the Domain Names to send fraudulent solicitations purportedly originating from the Complainant. The Complainant has the exclusive interest in the Mark and has not given the Respondent permission to utilize it. Further, the Disputed Domain Names have been used to send email solicitations to the Complainant's customers for ad sales in non-existent special features of the Complainant's newspapers. These fraudulent email solicitations purport to be from persons identifying themselves as advertising managers of the Complainant. However, neither the individuals nor their identified positions exist at the Complainant. Further, the Disputed Domain Names redirect to the Complainant's website, having the effect of supporting the deception that the solicitations originate from the Complainant. Such fraudulent solicitations do not constitute a *bona fide* use of the Disputed Domain Names.

The Respondent registered and is using the Disputed Domain Names in bad faith. The Respondent registered the Disputed Domain Names for the express purpose of defrauding the Complainant's customers by sending emails soliciting ad sales by masquerading as Complainant's employees.

#### B. Respondent

The Respondent did not reply to the Complainant's contentions.

### 6. Discussion and Findings

Paragraph 4(a) of the Policy directs that the Complainant must prove each of the following:

(1) that the disputed domain name registered by the Respondent is identical or confusingly similar to a trademark or service in which the Complainant has rights;

(2) that the Respondent has no rights or legitimate interests in respect to the disputed domain name; and

(3) that the disputed domain name has been registered and is being used in bad faith.

#### A. Identical or Confusingly Similar

It is indisputable that the Disputed Domain Names incorporate the Mark in its entirety. The Complainant is engaged in the business of selling advertising in its publications, both print and online. Thus, the addition of the descriptive suffixes "Adonline" (read as "ad online") or "Advertising" does nothing to reduce the confusingly similar nature. See *Oki Data Americas, Inc. v. ASD, Inc.*, <u>WIPO Case No. D2001-0903</u> (November 6, 2001). It is also well established that the addition of a gTLD such as .com does not significantly diminish the confusing similarity. Accordingly, the Panel finds that paragraph 4(a)(i) of the Policy is satisfied.

**B. Rights or Legitimate Interests**

The Panel notes the following in relation to any possible rights or legitimate interests of the Respondent in the Disputed Domain Names: (i) there is no evidence that the Respondent has been commonly known by the Disputed Domain Names; (ii) the Complainant has not authorized or licensed the Respondent to use the Disputed Domain Names or the Mark; (iii) there is no evidence that the Respondent has any proprietary or contractual rights in any registered or common law trademark consisting of or containing the terms "wallstreetjournaladonline" or "wallstreetjournaladvertising"; (iv) there is no evidence of legitimate, non-commercial or fair use of the Disputed Domain Names.

For these reasons, the Panel finds that paragraph 4(a)(ii) of the Policy is satisfied.

**C. Registered and Used in Bad Faith**

The Panel finds that the Complainant has satisfied its burden of proof in establishing the Respondent's bad faith registration and use. Paragraph 4(b)(iv) states that evidence of bad faith may include a respondent's use of a domain name to intentionally attempt to attract, for commercial gain, Internet users to the respondent's online location by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation or endorsement of a product or service offered at said online location.

Due to the undisputed renown of the Mark, it is inconceivable that the Respondent registered the Disputed Domain Names without knowledge of them. Further, the Complainant has shown that the Disputed Domain Names are configured to redirect Internet users to the Complainant's website. Other panels have found the Mark to be "famous." See e.g. *Dow Jones & Company, Inc. and Dow Jones L.P. v. John Zuccarini, d/b/a Cupcake Patrol*, WIPO Case No. D2001-0302 (May 18, 2001).

The Complainant has shown that the Respondent attempted to defraud Internet users by sending email solicitations originating from the Disputed Domain Names and posing as employees of the Complainant. Thus, it is clear that the Respondent attempted to lure, for unlawful commercial gain, Internet users to the Respondent's fraudulent scheme by creating a likelihood of confusion with the Mark as to the source and affiliation of the emails.

Accordingly, the Panel concludes that the Complainant has satisfied paragraph 4(a)(iii) of the Policy.

**7. Decision**

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the domain names, <wallstreetjournaladonline.com> and <wallstreetjournaladvertising.com> be transferred to the Complainant.

Maxim H. Waldbaum
Sole Panelist

Dated: March 5, 2008

[1]Although Complainant recites Domains by Proxy, Inc. as an additional respondent, a Whois database inquiry provided by the registrar has clearly established that Domains by Proxy, Inc. is no longer the registrant. Therefore, Domains by Proxy, Inc. is not a proper respondent to this proceeding.

EXHIBIT B

# EXHIBIT - B

Plaintiff Julia Sorokin's NY Indictment
on False Charges

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Post 41 - 50,000
Bail

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Julia Sorokin (AKA Victoria Gleizer, Nancy Gold,
Kelly Armstrong, Meredith Taylor)

Defendant.

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuse

the defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of

Penal Law §190.80(1), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or

about May 10, 2007 to on or about March 5, 2008, knowingly and with intent to defraud

assumed the identity of another person, to wit, The Wall Street Journal, by presenting herself as

that other person, and by acting as that other person, and by using personal identifying

information of that other person and thereby obtained money in an aggregate amount that

exceeded two thousand dollars.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the

defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of

Penal Law §190.80(3), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about May 10, 2007 to on or about March 5, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The Wall Street Journal, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby committed and attempted to commit a class D felony or higher level crime, and acted as an accessory in the commission of a class D or higher level felony.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **IDENTITY THEFT IN THE FIRST DEGREE**, in violation of Penal Law §190.80(1), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about October 8, 2007 to on or about July 31, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The New York Times, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby obtained money in an aggregate amount that exceeded two thousand dollars.

FOURTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuse the defendant of the crime of **IDENTITY THEFT IN THE SECOND DEGREE**, in violation of Penal Law §190.79(3), committed as follows:

The defendant, in the County of New York and elsewhere, during the period from on or about October 8, 2007 to on or about July 31, 2008, knowingly and with intent to defraud assumed the identity of another person, to wit, The New York Times, by presenting herself as that other person, and by acting as that other person, and by using personal identifying information of that other person and thereby committed and attempted to commit a felony and acted as an accessory to the commission of a felony.

ROBERT M. MORGENTHAU
District Attorney

**EXHIBIT C**

# EXHIBIT - C

Dow Jones & Co. Inc. WSJ Magazine
launch press release



## PRESSROOM

Wall Street Journal Unveils Highly Anticipated WSJ., A Glossy Lifestyle Magazine Targeting Journal Readers
*Appeals to a Broad Range of Luxury Marketers-Drawing New Advertisers to the Journal Franchise*

**NEW YORK (Sept. 3, 2008)** — The Wall Street Journal today unveiled its much anticipated glossy lifestyle magazine, WSJ., at a breakfast held at The Morgan Library & Museum in New York City. WSJ., with a global circulation of 960,000, will appear on Friday, Sept. 5, in The Wall Street Journal Asia and The Wall Street Journal Europe and on Saturday, Sept. 6, in the U.S. Weekend Edition of the Journal.

WSJ. is a celebration of the lifestyle of its readers, and it will serve as the inside track on how to live life to the fullest. From cars to fashion, from property to philanthropy, from personalities to travel, and collecting to investing, the magazine will explore the smartest, most sophisticated choices worldwide.

1. For full press release click
   http://www.dowjones.com/Pressroom/PressKits/WSJpresskit/WSJ_presskit.htm

1. http://www.dowjones.com/Pressroom/PressKits/WSJpresskit/WSJ_presskit.htm



# EXHIBIT - D

The District Attorneys Press Release
thanking the Wall Street Journal for
their assistance in indicting
Plaintiff Julia Sorokin

DISTRICT ATTORNEY - NEW YORK COUNTY

**NEWS RELEASE**                                            Contact: Alicia Maxey Greene
**December 17, 2008**                                                    212-335-9400


Manhattan District Attorney Robert M. Morgenthau announced today the indictment of a 38-year-old woman for falsely claiming to be affiliated with the New York Times and The Wall Street Journal and fraudulently selling advertisements in the publications.

The defendant, JULIA SOROKIN, faces identity theft charges in connection with her scheme. She had no legitimate connection with either publication.

After purchasing internet domain names that included the names of the publications, SOROKIN typically e-mailed solicitations to luxury resorts and real estate companies west of the Mississippi and in the Caribbean. Using a number of aliases and representing herself as an employee of the newspapers, she sold space in purported "special sections" advertising luxury properties in different areas of the United States. In another set of phony solicitations, she targeted small businesses offering ads in special sections featuring "Fastest Growing Franchises." When these phony special sections failed to appear, advertisers found her telephone and Web site disconnected, and were unable to contact her.

The investigation leading to the indictment revealed that SOROKIN solicited dozens of businesses and collected $47,708.75 from May 2007 through July 2008. Impersonating The Wall Street Journal, SOROKIN sold ad space to 30 businesses and pocketed $29,205. While impersonating The Times, she stole $18,503.75 from a dozen would-be advertisers. She deposited the money into corporate accounts that she opened using the names "Perfect Vision Media" and "Crystal Clear Media." SOROKIN conducted the scheme from various addresses in California, Florida, Texas, New Jersey, Long Island and Brooklyn.

She used the following names to carry out her scheme: VICTORIA GLEIZER, NANCY GOLD, KELLY ARMSTRONG, MEREDITH TAYLOR and KAREN MCCUE. The bogus internet domains were wallstreetjournaladonline.com, nytimesadonline.com, newyorktimesadvertising.com, nytimesadvertisingonline.com, newyorktimesad.com and newyorktimesadv.com.

The investigation began when victims began contacting The New York Times to complain about their ads not appearing and The Times informed the District Attorney's office.

The defendant was arrested on December 2, 2008 in San Diego, California. She has been indicted on five counts of Identity Theft in the First Degree, a class D felony, which is punishable by up to 2 1/3 to 7 years in prison and three counts of Identity Theft in the Second Degree, a class E felony, which is punishable by up to 1 to 3 years in prison.

SOROKIN is scheduled to be arraigned today in New York State Supreme Court.

Mr. Morgenthau thanked the San Diego Sheriff's Department, specifically Detectives Carlos Vasquez, Julio Sandoval and Lenice Lopez; and San Diego Regional Fugitive Task Force U.S. Deputy Marshal Michael Mitchell. The District Attorney also thanked The New York Times and The Wall Street Journal.

Assistant District Attorney Joanne Siegmund presented the case to the grand jury and will be in charge of the prosecution, under the supervision of Assistant District Attorney Thomas Wornom, Chief of the Special Prosecutions Bureau. Senior Investigator Terence Hayes assisted, under the supervisor of Supervising Senior Investigator Jose Flores and Chief Joseph Pennisi. Paralegal Ilana Morris and Junior Financial Investigator Monica Awad, of the Financial Crimes Bureau, also assisted.

Defendant Information:

JULIA SOROKIN, 6/2/1970
W. Market Street
San Diego, California



EXHIBIT E

# EXHIBIT - E

## PLAINTIFF JULIA SOROKIN's

> BUSINESS TERMS & MARKETING MATERIALS

> WALL STREET JOURNAL INSERT AD GUIDELINES

# CRYSTAL CLEAR MEDIA LLC

PERFECT VISION MEDIA LLC 

## ABOUT US:

Crystal Clear Media and Perfect Vision Media are two companies you have come to know over the years for marketing and public relations. We have created a new method to assist our clients in new markets.

## INSERT MAGAZINE ADVERTISING

In today's economy, many businesses find that the only thing stopping them from attracting a larger customer audience is the cost of large scale advertising. Many of the major newspapers in the U.S. require a minimum budget to place advertising.

Insert Magazine Advertising is the solution to this barrier in your marketing plans. With Insert Magazine Advertising, smaller businesses have greater buying power due to the leverage of co-op advertising.

Coop advertising utilizes the discounted rates that major newspapers give advertising agencies with the buying power of multiple advertisers. This combination reduces the cost of advertising in a major newspaper.

Each Insert will have a theme to support your industry and your advertising message with a national presence.

Unlike direct advertising coop advertising gives your marketing a true impact.

The WSJ Media Insert is an Insert Magazine that will be placed in the Wall Street Journal® for its national distribution. This insert will be placed in the Business and Real Estate sections.

Publisher reserves the right to cancel or change the insertion date to a later date before issuing a refund or new advertising. Publisher, shall not be subject to any liability whatsoever for any failure to publish or circulate all or any part of any issue(s) of the magazine insert because of strikes, work stoppages, accidents, fires, acts of God or any other circumstances not within the control of the Publisher.

# *WSJ Media*

WSJ Media is not affiliated with the Wall Street Journal® or the Dow Jones Company®

## OK SO THE WALL STREET JOURNAL TOLD

## YOU THAT YOUR ADVERTISING BUDGET

## IS MISSING A FEW ZEROS.

## WITH COOP ADVERTISING WE CAN HELP

## YOUR BUSINESS REACH

## THE SAME AUDIENCE WITHOUT

## BREAKING YOUR MARKETING BUDGET.

 CRYSTAL CLEAR MEDIA LLC

 PERFECT VISION MEDIA LLC

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Julia Sorokin
Louis A. Bravo

**(b)** County of Residence of First Listed Plaintiff    San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

JULIA SOROKIN, Pro Se    3895 Clairmont Drive, Suite B#210    Telephone: (858) 384-3528
LOUIS A. BRAVO, Pro Se    San Diego, CA 92117    Facsimile: (858) 384-3581

## DEFENDANTS

DOW JONES & COMPANY INC.; WALL STREET JOURNAL;
ATTORNEY MARTIN SCHWIMMER

County of Residence of First Listed Defendant    New York City, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

**'10 CV 1861 JAH    JMA**

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1 U.S. Government
     Plaintiff

☐ 3 Federal Question
     (U.S. Government Not a Party)

☐ 2 U.S. Government
     Defendant

☒ 4 Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):    28 U.S.C. § 1332 (a) (1)

Brief description of cause:    Conspiracy, Defamation of Character, Tortious Interference, and Intentional Infliction of Emotional Distress by the Defendants.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
     UNDER F.R.C.P. 23

DEMAND $    $500,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE    Hon. William Q. Hayes    DOCKET NUMBER    10 CV1153WQH

DATE    September 8, 2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  17741    AMOUNT $350    9/8/10    APPLYING IFP    JUDGE    MAG. JUDGE

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS017741
Cashier ID: bhartman
Transaction Date: 09/08/2010
Payer Name: KNOX ATTORNEY SERVICES
----------------------------------
CIVIL FILING FEE
 For: SOROKIN V DOW JONES AND CO.
 Case/Party: D-CAS-3-10-CV-001861-001
 Amount:         $350.00
----------------------------------
CHECK
 Check/Money Order Num: 10084
 Amt Tendered:  $350.00
----------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00


There will be a fee of $45.00
charged for any returned check.
```